UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| KELLIE PIERCE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CAUSE NO.: 1:14-CV-84-TLS |
| ZOETIS, INC. and LOIS HEUCHERT, | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

The Plaintiff, Kellie Pierce, has sued her former employer, Zoetis, Inc., and former supervisor, Lois Heuchert, "to enforce civil rights arising out of Plaintiff's employment relationship with Zoetis, Inc. . . . pursuant to state laws of Indiana." (First Am. Compl. ¶ 1, ECF No. 4). She identifies two causes of action: wrongful termination against Zoetis and Heuchert, and tortious interference with business expectancies against Heuchert only. Defendant Zoetis has filed a Motion to Dismiss [ECF No. 7], on the grounds that Indiana does not recognize an independent cause of action for wrongful termination. Defendant Lois Heuchert has also moved to dismiss the claims against her [ECF No. 21], arguing that there is no independent cause of action for wrongful termination under Indiana law, and that the Plaintiff's factual allegations do not make out a plausible claim for tortious interference with a business relationship. The Plaintiff has responded to both motions, and the matter is ripe for the Court's consideration.

## STANDARD OF REVIEW

When reviewing a complaint attacked by a Rule 12(b)(6) motion, a court must accept all of the factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Under the liberal

notice pleading requirements of the Federal Rules of Civil Procedure, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint need not contain detailed facts, but surviving a Rule 12(b)(6) motion "requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Legal conclusions can provide a complaint's framework, but unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim. *Id.* at 680. A plaintiff can also plead himself out of court if he pleads facts that preclude relief. *See Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011).

**ANALYSIS**

**A.      Unlawful Discharge Under Indiana Common Law**

The Plaintiff alleges that Zoetis and Heuchert terminated her employment in retaliation for making internal complaints that she was being sexually harassed. The Plaintiff's First Amended Complaint sets forth facts highlighting the instances of alleged misconduct. The Plaintiff alleges that a training instructor told Plaintiff that she needed to "sex it up" when giving her presentations. (First Am. Compl. ¶ 12, ECF No. 4.) When the Plaintiff told Heuchert, she responded by apologizing and telling the Plaintiff to "just hang in there, you are almost done."

2

(*Id.* ¶ 13.) After this conversation, Heuchert told the Plaintiff that she needed to do well because the Regional Director was monitoring her closely, which she interpreted as a directive to "do whatever it took to make the trainer give her passing grades." (*Id.* ¶ 15.) Heuchert would tell the Plaintiff to stroke her counterpart's ego. (*Id.* ¶ 18.) At an out-of-town meeting, the Plaintiff entered a banquet room with a coworker and Heuchert said "What are you two sleeping together in the same room? You are always together!" (*Id.* ¶ 21.) Finally, Heuchert yelled loudly at the Plaintiff and used profanity during lunch at a restaurant. (*Id.* ¶ 27.) After the Plaintiff complained to human resources about this conduct, which prompted an investigation, Heuchert increased the Plaintiff's sales quotas, the Plaintiff had trouble with expense reimbursements and receiving her bonus pay, and, finally, the Plaintiff was terminated from her employment for poor performance.

The Defendants argue that the Plaintiff's common law claim for wrongful discharge must be dismissed because she has not alleged any of the recognized exceptions to the employment at will doctrine that governed her employment relationship with Zoetis. The Plaintiff counters with the argument that, in *Frampton v. Central Ind. Gas Co.*, 297 N.E.2d 425 (1973), Indiana recognized an exception to the employment at will doctrine when an employee is discharged solely for exercising a statutorily conferred right. The Plaintiff maintains that she exercised a statutorily conferred right by making internal complaints about sexual harassment. She points to the Indiana Civil Rights Law (ICRL), Indiana Code § 22-9-1-2, as the source of her statutory right to be free from discrimination in employment. The Plaintiff also cites to Title VII's protection from retaliatory discharge. The Plaintiff submits that "[c]ourts routinely address *Frampton* retaliatory discharge claims without requiring them to be presented to the [Indiana Civil Rights Commission]" (Pl.'s Brief 8, ECF No. 10 (citing *M.C. Welding And Machining v.*

*Kotwa*, 845 N.E.2d 188, 193 (Ind. Ct. App. 2006) (addressing claim that defendant terminated the plaintiff's employment because he applied for unemployment benefits), and *McGarrity v. Berlin Metals, Inc.*, 774 N.E.2d 71, 79 (Ind. Ct. App. 2002) (addressing claim that the plaintiff's termination was in retaliation for refusing to file tax return that would amount to illegal tax evasion)).

Because this Court is sitting in diversity, it must ascertain the substantive content of state law as it has been determined by the Indiana Supreme Court, or as it would be by that court if the present case were before it. *See Craig v. FedEx Ground Package Sys., Inc.*, 686 F.3d 423, 426 (7th Cir. 2012). Under Indiana's employment at will doctrine, both the Plaintiff and the Defendant were permitted to terminate the employment at any time for "good reason, bad reason, or no reason at all." *Meyers v. Meyers*, 861 N.E.2d 704, 706 (Ind. 2007) (quoting *Montgomery v. Bd. of Trs. of Purdue Univ.*, 849 N.E.2d 1120, 1128 (Ind. 2006)). The Indiana Supreme Court has reaffirmed the narrowness of the *Frampton* public policy exception upon which the Plaintiff relies. The *Meyers* court noted that the *Frampton* exception was based on express statutory language prohibiting employers from evading the obligations of the Indiana Worker's Compensation Act. *Id.* The Act provided that "no rule, regulation, or other device" shall relieve an employer from its obligations, and the *Frampton* court had found the threat of discharge to be such a prohibited device. *Id.* (quoting *Frampton*, 297 N.E.2d at 427–28). "Other than the *Frampton* exception, which is grounded on express statutory language, the Indiana appellate cases permitting retaliatory discharge actions have generally involved plaintiffs allegedly terminated in retaliation for refusing to violate a legal obligation that carried penal consequences." *Id.* at 707; *see also McClanahan v. Remingon Freight Lines, Inc.*, 517 N.E.2d

4

390, 393 (Ind. 1988) (An employer may not discharge an employee "for refusing to commit an illegal act for which he would be personally liable."). The Indiana Supreme Court confirmed that any other revision to or rejection of the employment at will doctrine "is better left to the legislature." *Meyers*, 861 N.E.2d at 707 (quoting *Morgan Drive Away, Inc. v. Brant*, 489 N.E.2d 933, 934 (Ind. 1986)).

The ICRL is an example of such a legislative adjustment. The ICRL, Indiana Code §§ 22-9-1-1 through 22-9-1-18, prohibits discrimination in employment on the basis of race, religion, color, sex, disability, national origin, or ancestry and applies to most private and public employers in Indiana. Ind. Code §§ 22-9-1-2, 22-9-1-3. The ICRL expressly authorizes civil suits by private litigants and sets out procedural prerequisites to bringing suit. Ind. Code §§ 22-9-1-16, 22-9-1-17. The Plaintiff has not met these procedural prerequisites. Specifically, she has not filed a complaint with the Indiana Civil Rights Commission (ICRC) prior to commencing legal action. *See* Ind. Code § 22-9-1-16.

The Plaintiff's submissions suggest that she believes that she can invoke the ICRL as the basis for a public policy that supports her common law retaliatory discharge claim. She also invokes Title VII's anti-retaliation provision. This is wrong. The Seventh Circuit and federal district courts in Indiana have consistently predicted that Indiana courts would not recognize a common law claim for wrongful discharge contrary to public policy where the underlying statute establishes its own remedies and procedures for discrimination and retaliatory discharge. *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 503–04 (7th Cir.1999) (rejecting the plaintiff's claim for exception to Indiana's employment at will doctrine because the Indiana legislature had created a specific statutory remedy for discharge of an employee who complained about health or safety

5

issue in the workplace); *Davenport v. Ind. Masonic Home Found. Inc.*, No. IP00–1047–C–H/G, 2004 WL 2278754, at *7 (S.D. Ind. Sept. 30, 2004) (holding that the plaintiff was not entitled to seek an independent common law claim for wrongful discharge because remedies for discrimination and retaliatory discharge were available under Title VII, the American with Disabilities Act, and the Indiana Civil Rights Act); *Combs v. Ind. Gaming Co.*, No. NA99–0154–C–H/S, 2000 WL 1716452, at *2 (S.D. Ind. Aug. 30, 2000) (explaining that where the legislature has spelled out the public policy and the remedy, the remedy is already part of the public policy and does not require a common law supplement); *Reeder–Baker v. Lincoln Nat'l Corp.*, 644 F. Supp. 983, 986 (N.D. Ind. 1986) (holding that the plaintiff had no need for the *Frampton* exception because she had a cause of action under Title VII for unlawful employment practices, including retaliatory discharge).

The Plaintiff had statutory remedies, but failed to invoke them within the time limits established by those statutes. Under these circumstances, allowing her to bring an action under state law for wrongful discharge would unnecessarily expand Indiana's narrow public policy exceptions to the employment at will doctrine. The Court finds the reasoning employed by the Indiana Court of Appeals in a case where a plaintiff argued that his discharge contravened his clear statutory right to protection under Indiana's Whistle Blower Law (WBL) to be applicable:

> [W]e conclude that broadening the public policy exception to the employment at will doctrine is not appropriate in Ogden's case. If we were to hold that a claimant could seek judicial review based on a right derived from the WBL through common law and, therefore, bypass the exhaustion of administrative remedies requirement of the WBL, it would make the exhaustion requirements of the WBL illusory.

*Ogden v. Robertson*, 962 N.E.2d 134, 146 (Ind. Ct. App. 2012). Likewise, the Plaintiff's attempts to obtain judicial review based on a right derived from the ICRL through common law,

6

thereby allowing her to bypass the administrative remedies through which the legislature determined such claims would be investigated and prosecuted, would make those administrative requirements illusory.

The Plaintiff has not identified a single case where an Indiana court has extended a *Frampton*-type retaliatory discharge claim to the exercise of rights under the ICRL or Title VII. Because the Indiana courts would be unlikely to expand the public policy exception to the at-will employment doctrine under the circumstances of this case, the Court grants the Defendants' motions to dismiss Count One of the First Amended Complaint.

**B.** **Tortious Interference With a Business Relationship** - **Defendant Heuchert**

Defendant Heuchert seeks dismissal of Count Two on grounds that the Amended Complaint does not set out a plausible claim for tortious interference with a business relationship. Heuchert submits that, because illegal action is a necessary element—and the only action alleged is Heuchert's increase of the Plaintiff's sales quotas—the claim must be dismissed.

"The elements of tortious interference with a business relationship are: (1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship." *Rice v. Hulsey*, 829 N.E.2d 87, 91 (Ind. Ct. App. 2005) (internal quotation marks omitted). For the Plaintiff to succeed on a tortious interference with a business relationship claim, she must show that Heuchert acted illegally when she interfered with the Plaintiff's employment relationship

with Zoetis. *Brazauskas v. Fort Wayne-South Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003); *Levee v. Beeching*, 729 N.E.2d 215, 222 (Ind. Ct. App. 2000).

According to the First Amended Complaint, Heuchert tortiously interfered with the Plaintiff's employment relationship by creating "impossible sales quotas skewed to make sure the Plaintiff would not succeed." (First Am. Comp. ¶ 62.) The Plaintiff alleges that Heuchert had no justification or business reason to increase her sales quotas over 110%, or to create a list of clinics for the Plaintiff to increase sales when those clinics were already on the Plaintiff's sales' list. (*Id.* ¶ 63–64.) The Plaintiff alleges that, by these actions, "Heuchert intended to and did create an environment that allowed for the termination of the Plaintiff." (*Id.* ¶ 65.)

The action of increasing the Plaintiff's sales quota was within the scope of Heuchert's duties as her manager. As such, this action cannot form the basis of a claim for tortious interference with the Plaintiff's employment. *See Martin v. Platt*, 386 N.E.2d 1026, 1027 (Ind. Ct. App. 1979) (affirming summary judgment for supervisors of plaintiff employees because "an officer or director of a corporation will not be held independently personally liable for inducing the corporation's breach of its contract, if the officer's or director's action is within the scope of his official duties on behalf of the corporation"); *Kiyose v. Trs. of Ind. Univ.*, 333 N.E.2d 886, 891 (Ind. Ct. App. 1975) (affirming dismissal of tortious interference claims against university trustees and other agents because "liability does not accrue for the performance of acts lying within the scope of the agent's duties"); *see also Leslie v. St. Vincent New Hope, Inc.*, 873 F. Supp. 1250, 1256 (S.D. Ind. 1995) (analyzing Indiana law to conclude that, because "the focus of the tort is to prevent unjustified interference by third parties," the court did not intend "to treat supervisors and other agents of the employer as it would treat outsiders to the employment

relationship"). Because the acts Hechert took within the scope of her duties with Zoetis cannot form the basis of a tortious interference claim, the Court will ignore the allegations regarding the assignment of quotas for purposes of determining the plausibility of the Plaintiff's claim.

The Plaintiff's First Amended Complaint alleges other actions by Heuchert, and in response to Heuchert's motion to dismiss, the Plaintiff relies on these to assert that she has alleged multiple acts that meet the tortious interference definition of illegality. She argues:

> Defendant Heuchert engaged in sexual discrimination and defamation in violation of Indiana law. She told Plaintiff to "just hang in there" when Plaintiff reported harassment. Defendant Heuchert told Plaintiff to stroke her male counterpart's ego. Defendant Heuchert publicly accused Plaintiff of sleeping with a male coworker not only in front other employees but also everyone within earshot at the National Awards Banquet.

(Pl.'s Response 9, ECF No. 23.) She further alleges that Heuchert "actively interfered with Plaintiff's sales quotas," not only by raising the quotas, but by interfering with individual sales. (*Id.*)

The Plaintiff's First Amended Complaint contains factual allegations consistent with her arguments. However, all of the challenged actions either fall within Heuchert's supervisory duties, or fail to meet the illegality requirement. For example, the Plaintiff alleges that when Heuchert accompanied her on a field appointment, Heuchert took over the sales call, which resulted in offending the veterinarian and losing the clinic as a customer. (First Am. Comp. ¶ 20.) She makes a similar allegation regarding a separate sales call in paragraph 23. Heuchert's actions during sales' calls fall within the scope of her duties and responsibilities, as does requiring the Plaintiff to attend a meeting (First Am. Compl. ¶ 24), and informing the Plaintiff that she "needed to do well because the Regional Director was monitoring her results daily" (*Id.* ¶ 15).

When the Plaintiff asserts that Heuchert engaged in defamation, the Court assumes the Plaintiff is referring to the factual allegation contained in paragraph 21 of the First Amended Complaint:

> On or about February 2013, Plaintiff and her team attended a National Sales Meeting in Dallas, Texas. While entering the mandatory National Awards Banquet, with her counterpart, Kerry Hab, they headed toward their assigned seats. Then Lois Heuchert very loudly said "What are you two sleeping together in the same room? You are always together!"

Even if this could be considered defamation, Indiana courts do not regard defamation as illegal conduct for purposes of a tortious interference claim. *Levee*, 729 N.E.2d at 222–23.

None of the remaining factual allegations against Heuchert support a claim of tortious interference through illegal acts. The Plaintiff alleges that Heuchert apologized to the Plaintiff when she reported that one of the training instructors for new employees told the Plaintiff that she needed to "sex it up" when giving her presentations, and then told her to "Just hang in there, you are almost done." (First Am. Compl. ¶ 12–13.) Heuchert also told the Plaintiff to stroke her counterpart's ego. Finally, while the Plaintiff and Heuchert were in a restaurant, Heuchert yelled at the Plaintiff with a profanity, which embarrassed the Plaintiff. (*Id.* ¶ 27 (alleging that Heuchert yelled "'WHAT THE FUCK! Why are you talking about puppies?").) While the behavior, some of it bizarre, may be construed and interpreted in different ways, it does not rise to the level of unlawful conduct or create a reasonably inference that Heuchert employed it to intentionally interfere with the Plaintiff's relationship with Zoetis.

The Plaintiff has not alleged facts upon which the Court can draw a reasonable inference that Heuchert committed tortious interference with a business relationship. Count Two of the First Amended Complaint is dismissed.

## C. Opportunity to Amend

"Generally, if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem, even if the court is skeptical about the prospects for success." *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010); *see also Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) ("The better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim." (quotation marks and citation omitted)). However, a court should not grant leave to amend "where the amendment would be futile." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) (quoting *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)). It not being obvious that any amendments would survive a subsequent challenge under Rule 12(b)(6), the Court will require the Plaintiff to seek leave to file any amended pleading.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant Zoetis Inc.'s Motion to Dismiss [ECF No. 7], and GRANTS Defendant Lois Heuchert's Motion to Dismiss [ECF No. 21]. The Plaintiff is GRANTED until March 13, 2015, to seek leave to file an amended complaint.

SO ORDERED on February 25, 2015.

        s/ Theresa L. Springmann
        THERESA L. SPRINGMANN
        UNITED STATES DISTRICT COURT